IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Marcia S. Krieger

Civil Action No. 18-cv-03334-MSK-SKC

PAUL DREYER, and
SUSAN DREYER

    Plaintiffs,

v.

AMERICAN NATIONAL PROPERTY & CASUALTY CO.,

    Defendant.

---

**OPINION AND ORDER GRANTING MOTION TO DISMISS**

---

**THIS MATTER** comes before the Court pursuant to the Defendant's ("American") Motion to Dismiss **(# 17),** the Plaintiffs' ("the Dreyers") response **(# 26)**, and American's reply **(# 27)**. For the reasons that follow, the motion is granted.

## I. JURISDICTION

The Court exercises diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332. Sitting in diversity, this Court applies Colorado law to the parties' dispute. *See Perlmutter v. U.S. Gypsum Co.*, 4 F.3d 864, 869 (10th Cir. 1993).

## II. FACTS

The facts, as recited in the Dreyers' Amended Complaint **(# 15)**, are straightforward. American issued a homeowner's policy to Wayne and Lou Ann Fundus. In March 2015, while that policy was in effect, the Funduses suffered damage to their home from a brushfire. They made a claim on their policy, and American paid the claim. The Amended Complaint alleges that "following the brushfire," the Funduses removed vegetation around their house, including a

large bush. The Amended Complaint is not specific as to whether the bush removal was necessitated by repairs owing to the brushfire, as opposed to merely being performed after the brushfire, but the Court will assume that the brushfire compelled removal of the bush. The Amended Complaint is not specific as to when the removal of the bush occurred. The removal of the bush left a hole on the property, but the Funduses did not repair or adequately fill that hole. The hole became overgrown with grass, becoming a dangerous condition on the property.

In or about August 2015, American cancelled or elected not to renew the Funduses' policy.

In October 2015, Plaintiff Paul Dreyer "was assisting the Funduses to repair the property after the brushfire." (# 15 at 4). (Again, it is not clear from the Amended Complaint whether these repairs were required by damage from the fire or whether they simply occurred after the fire, but again, the Court will assume that the repairs involved damages sustained during the fire.) Mr. Dreyer placed a ladder against the side of the home, but because of the hole left in the property from the removal of the bush, the ladder shifted, Mr. Dreyer fell and was injured. The Dreyers filed suit against the Funduses in the Colorado District Court for Logan County, and the Funduses tendered a claim on their policy with American.

American denied the claim on the grounds that the policy was no longer in effect at the time of Mr. Dreyer's injury. Without insurance coverage, the Funduses entered into a *Nunn v. Mid-Century Ins. Co.*, 244 P.3d 116 (Colo. 2010) agreement with the Dreyers, conceding liability to the Dreyers in exchange for the Dreyers agreeing to accept assignment of any claims the Funduses might have against American relating to the policy in lieu of execution of any

2

judgment against the Funduses.[1]  Specifically, the Funduses assigned "all their rights, title, and interest that they may have to claims against [American]", which "may include … claims for breach of contract, bad faith breach of insurance contract, and statutory bad faith."[2]  **(# 1-4).**

The Dreyers, as assignees of the Funduses, now bring the following claims against American: (1) breach of contract; (2) common law bad faith breach of contract; (3) statutory unreasonable delay in payment; (4) violation of the Colorado Consumer Protection Act ("CCPA"); (5) violation of Colorado's Unfair Claims Practices Act; and (6) willful and wanton conduct.  **(# 15)**.

### III.  LEGAL STANDARD

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all well-pleaded allegations in the Amended Complaint as true and view those allegations in the light most favorable to the nonmoving party.  *Stidham v. Peace Officer Standards & Training*, 265 F.3d 1144, 1149 (10th Cir. 2001) (quoting *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999)).  The Court must limit its consideration to the four corners of the Amended Complaint, any documents attached thereto, and any external documents that are referenced in the Amended Complaint and whose accuracy is not in dispute.  *Oxendine v.*

---

[1] The Court notes the policy states that "[n]o one covered under this policy may assign or turn over any right or interest in regard to the policy without [American's] written consent." **(#17-2 at 32)**.  However, Colorado law generally provides that "assignments of post-loss benefits are usually found to the valid regardless of any non-assignment clause in the policy."  *Parrish Chiropractic Centers, P.C. v. Progressive Cas. Ins. Co.*, 874 P.2d 1049 (Colo. 1994).

[2] While the Dreyers represented that their settlement agreement with the Funduses was attached to the Amended Complaint, the agreement was in fact attached to the original complaint.  The Court will consider the agreement as it is both referenced in paragraph 15 of the operative Amended Complaint and is central to the Dreyers' claims.  *See Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001); *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002); *Dean Witter Reynolds, Inc. v. Howsam*, 261 F.3d 956, 961 (10th Cir. 2001).

*Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001); *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002); *Dean Witter Reynolds, Inc. v. Howsam*, 261 F.3d 956, 961 (10th Cir. 2001).

A claim is subject to dismissal if it fails to state a claim for relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To make such an assessment, the Court first discards those averments in the Complaint that are merely legal conclusions or "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 678-79. The Court takes the remaining, well-pleaded factual contentions, treats them as true, and ascertains whether those facts (coupled, of course, with the law establishing the requisite elements of the claim) support a claim that is "plausible" or whether the claim being asserted is merely "conceivable" or "possible" under the facts alleged. *Id.* What is required to reach the level of "plausibility" varies from context to context, but generally, allegations that are "so general that they encompass a wide swath of conduct, much of it innocent," will not be sufficient. *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012).

## IV. DISCUSSION

American moves to dismiss **(# 17)** all of the Dreyers' claims, arguing that the expiration of the Funduses' policy prior to Mr. Dreyer's accident terminated any obligations American had to cover losses on the property, and that the Funduses had no coverage for Mr. Dreyer's injuries.

### A. Breach of Contract

Under Colorado law, the elements of a claim for breach of contract are: (1) the existence of an enforceable contract; (2) the plaintiffs' performance of their obligations under the contract; (3) the defendant's failure to perform its obligations under the contract; and (4) the plaintiffs' damages flowing from the defendant's breach. *See Western Distributing Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992) (citations omitted).

4

When construing policy terms, the Court applies ordinary principles of contract interpretation: the court construes terms according to their plain meaning and attempts to read the document as a whole and give effect to all of its provisions. However, because insurance contracts are unique, ambiguous provisions should be construed in favor of affording coverage. *Greystone Const. Inc. v. National Fire & Marine Ins. Co.*, 661 F.3d 1272 (10th Cir. 2011).

Pursuant to the Declarations page of the Funduses' policy with American, Wayne and Lou Ann Fundus are the "Insureds" on the house listed at an address in Crook, Colorado.[3] **(# 17-2 at 5)**; **(# 17-2 at 3)**. The policy states that American "may cancel this policy" or "may elect not to renew this policy" for various reasons including non-payment of premiums or "if the risk has changed substantially since the policy was issued." **(# 17-2 at 32)**.

The policy provides coverage for injuries resulting from an "occurrence," which the policy defines as "an accident . . . which results in bodily injury or property damage during the policy period." **(# 17-2 at 4)**. It goes on to provide that "repeated or continuous exposure to substantially the same general conditions is considered to be one occurrence." **(# 17-2 at 4)**. The policy expressly states that "the originating incident must occur during the policy period for coverage to exist." **(# 17-2 at 4)**.

The plain language of the contract makes clear that the "occurrence" – the precipitating event that triggers coverage – is the "accident" that results in the injury. Here, the injury in question is the bodily injury sustained by Mr. Dreyer when he fell from the ladder, and the

---

[3] The homeowner's policy was filed in connection with the Motion to Dismiss along with a certification by a supervisor in American's Underwriting Support Services, verifying that the attached document is a full and complete copy of the insured's policy in effect on March 15, 2015. **(# 17-2).** The Court will consider this indisputably accurate document as it is both referenced in paragraph five of the operative Amended Complaint and is central to the Dreyers' claims. *See Oxendine*, 241 F.3d at 1275; *Jacobsen*, 287 F.3d at 941; *Howsam*, 261 F.3d at 961.

accident that caused that injury was the slippage of the ladder when Mr. Dreyer was working on it in October 2015. In the operative Amended Complaint, the Dreyers allege "[o]n or about August 25, 2015, [American] cancelled or chose not to renew the Funduses' homeowner's insurance policy." **(# 15 at 4)**.

The Dreyers do not allege any wrongdoing by American with respect to the cancellation or non-renewal of the homeowner's policy nor do they allege that the cancellation was invalid. Instead, they posit that the "occurrence" at issue is not Mr. Dreyer's fall from the ladder, but rather, the brushfire that occurred some seven months earlier, during the policy period. The Dreyers offer no controlling authority (and Colorado law seems to suggest otherwise) in support of their contention that coverage for a property damage accident that occurred during the policy period extends liability coverage for a subsequent bodily injury accident that happened seven months after the property damage and following the policy's valid cancellation. *See Kane v. Royal Ins. Co. of America*, 768 P.2d 678, (Colo. 1989) ("Remote causes are not relevant to the characterization of an insurance loss. In the context of this … litigation, the causation inquiry stops at the efficient physical cause of the loss; it does not trace events back to their metaphysical beginnings. The words 'due to or resulting from' limit this inquiry to the facts immediately surrounding the loss." (quoting *Pan American World Airways, Inc. v. Aetna Casualty & Surety Co.*, 505 F.2d 989 (2d Cir. 1974)),

Additionally, the Dreyers' sole, underlying claim against the Funduses was a premises liability claim. **(# 15 at 5)**. Colorado's premises liability statute, Colo. Rev. Stat. § 13-21-115, is the exclusive remedy available for parties injured on another's property. *Vigil v. Franklin*, 103 P.3d 322, 326 (Colo. 2004). Here, the parties do not dispute that Mr. Dreyer was an invitee on the Funduses' land. § 13-21-115(5). Under Colorado law, for an invitee to prevail on a premises

liability claim, he must prove: "(1) the landowner actually knew or should have known of the danger to the invitee and (2) the landowner unreasonably failed to exercise reasonable care to protect the invitee from that danger." *Lombard v. Colo. Outdoor Education Center, Inc.*, 187 P.3d 565, (Colo. 2008) (internal quotation marks omitted); *Vigil v. Franklin*, 103 P.3d 322, 328 (Colo. 2004). Thus, a premises liability claim accrues only when it can be shown that a landowner failed *to protect an individual against known dangers or dangers* that the landowner should have known, not when a dangerous condition occurs. So the question becomes – when did the Fundes' obligation to Mr. Dreyer arise? The answer must be when he was working on the ladder, two months after American cancelled the policy.

Taking the Dreyers' allegations as true, the Court finds there was no policy in effect when Mr. Dreyer was injured, thus, there is no enforceable contract. The existence of coverage for Mr. Dreyer's accident is a fundamental requirement underlying all of the Dreyers' claims here. Absent such coverage, there can be no claims against American for breach of the insurance contract.[4] Nor, in the absence of coverage, can the Dreyers state a plausible claim that American violated the Colorado Consumer Protection Act or Unfair Claims Practices Act. Thus, the lack

---

[4] Even if there was an enforceable contract, the Dreyers' claim for unreasonable delay/denial of payment of covered claims pursuant to Colo. Rev. Stat. § 10-3-1115 and § 10-3-1116 should be dismissed for lack of standing. Under Colorado law, this claim is not assignable. *See Hernandez v. American Standard Ins. Co. of Wisc.*, No. 11-cv-03076-RBJ, 2013 WL 6633392 (D. Colo. Dec. 16, 2013) (citing *Kruse v. McKenna*, 178 P.3d 1198, 1201 (Colo. 2008)); *Rooftop Restoration, Inc. v. Ohio Security Ins. Co.*, No. 15-cv-00620-LTB-KMT, 2015 WL 9185679 (D. Colo. Dec. 17, 2015). Moreover, the Dreyers' claim is a "third-party" claim, which is one where "an insurance company acts unreasonably in investigating, defending, or settling a claim brought by a third person against its insured." *Nunn*, 244 P.3d at 119. Colo. Rev. Stat. § 10-3-1116 provides for relief upon a showing that "a first-party claimant ['s] ... claim for payment of benefits has been unreasonably delayed." Since the Funduses are the named insureds on the policy **(# 17-2 at 5)** and the Dreyers are third-party beneficiaries of the policy, the first-party element of the Dreyers' § 10-3-1116 claim fails.

7

of coverage that is apparent from the allegations asserted in the Amended Complaint compels the dismissal of all of the Dreyers' claims as a matter of law.[5]

### V.  CONCLUSION

For the foregoing reasons, American's Motion to Dismiss **(# 17)** is **GRANTED**. All claims in this action are **DISMISSED** and the Clerk of the Court shall close this case.

Dated this 10th day of July, 2019.

**BY THE COURT:**

Marcia S. Krieger
Senior United States District Judge

---

[5] Because the defect in the Dreyers' Amended Complaint is a mistaken understanding of the legal effect of the policy language, not a defect in the pleading of particular facts, granting the Dreyers leave to amend their pleading would be futile.

8